UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

C. MARK CUPPS, *et al.*,                              )
                                                      )
                          Appellants/Plaintiffs,      )
v.                                                    )          Case No. 21-8088
                                                      )
PIONEER CANAL-LAKE HATTIE                             )
IRRIGATION DISTRICT,                                  )
                                                      )
                          Appellee/Defendant.         )

On appeal from the United States District Court for the District of Wyoming
No. 2:16-cv-00086-SWS
Honorable Scott W. Skavdahl, Presiding

---

**PETITION FOR *EN BANC* CONSIDERATION, OR IN THE
ALTERNATIVE, PANEL RE-HEARING**

---

RESPECTFULLY SUBMITTED on August 2, 2023.

/s/ M. Gregory Weisz
M. Gregory Weisz
Wyoming State Bar #6-2934
PENCE AND MACMILLAN LLC
5908 N. Yellowstone Road
Cheyenne, WY 82009
307-638-0386
gweisz@penceandmac.com
Attorney for Appellee PCLHID

# TABLE OF CONTENTS

TABLE OF CASES AND OTHER AUTHORITIES ..................................... iii-iv

REQUEST FOR EN BANC CONSIDERATION – RULE 35(b)(1) ............... 1

REQUEST FOR PANEL REHEARING ........................................................ 2

STATEMENT OF BACKGROUND FACTS .................................................. 3

ARGUMENT ............................................................................................... 3
    I.      The 2019 Tenth Circuit Ruling ..................................................... 3
    II.    2023 Decision Improperly Rejects Consideration of
          Key Information the 2019 Decision Found to Be Controlling .... 6
    III.   The 2023 Decision Ignores Controlling Law .............................. 12

CONCLUSION .......................................................................................... 15

CERTIFICATE OF DIGITAL SUBMISSION AND
PRIVACY REDACTIONS ......................................................................... 16

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ........... 16

CERTIFICATE OF SERVICE ..................................................................... 17

Attached:  Appendix A: July 19, 2023 ORDER AND JUDGMENT for which
rehearing is requested .............................................................................. 18

**Cases**                                                                                   **Pages**

Cupps v. PCLHID, 799 Fed. Appx. 571 (10th Cir. 2019)
.......................................................................................... 1, 4, 5, 6

Dish Network Corp. v. Arrowood Indem.,
772 F.3d 856 (10th Cir. 2014).................................................................. 8

Dobbs v. Anthem Blue Cross & Blue Shield,
600 F.3d 1275 (10th Cir. 2010).............................................................. 7, 14

Kern River Co. v. United States, 257 U.S. 147 (1921)........................... 5, 14

Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.,
429 U.S. 363 (1977)................................................................................. 13

Twin Falls Canal Co., v. Am. Falls Reservoir Dist. No. 2,
49 F.2d 632 (D. Idaho 1931), aff'd 59 F.2d 19 (9th Cir. 1932,
*cert. denied* 287 U.S. 638 (1932)............................................................ 14

United States v. Doyle, 468 F.2d 633 (10th Cir. 1972) ........................... 10

United States v. One Parcel of Real Est. at 3229 S.W. 23rd St., Miami Fla.,
768 F. Supp. 340 (S.D. Fla. 1991) ........................................................... 13

United States v. Reimann, 504 F.2d 135 (10th Cir. 1974) ...................... 11

United States v. Walker, 918 F.3d 1134 (10th Cir. 2019) ...................... 8, 9, 10

United States v. West, 646 F.3d 745 (10th Cir. 2011)............................. 7

United States v. Yazell, 382 U.S. 341 (1966)......................................... 13

Upper Wagon Box, LLC v. Box Hanging Three Ranch Ltd. P'ship,
2022 WY 155 .......................................................................................... 13

Zinna v. Congrove, 755 F.3d 1177 (10th Cir. 2014) .............................. 7
**Statutes**

Act of March 3, 1891, 26 Stat. 1101-02, ch. 561, §§ 18-21, codified
as amended at 43 U.S.C. §§ 946-949......................................................passim

Pub. L. 94-579, § 706(a), 90 Stat. 2743 (1976) ......................................2

**Other Authority**

1 Clark on Surveying and Boundaries § 15.12 (6th ed. 1992)................11

1908 Interior Department 1891 Act regulations,
36 Pub. Land Dec. 567 (1908) ................................................................4

**Administrative Decisions**

Windsor Reservoir & Canal Co. v. Miller, 51 Pub. Lands Dec. 27
(Dep't of Interior Jan. 10, 1925) ............................................................5

COMES NOW Appellee Pioneer Canal-Lake Hattie Irrigation District (hereinafter "PCLHID"), and pursuant to Fed. R. App. P. 35/10th Cir. Rule 35.1 and Fed. R. App. P. 40/10th Cir. Rule 40.1 hereby respectfully petitions the Court for *en banc* consideration or panel rehearing. On July 19, 2023, a three-judge panel issued its "Order and Judgment" (hereinafter the "2023 Decision") (Appendix A hereto). The 2023 Decision reversed in part and affirmed in part a ruling from Honorable Scott W. Skavdahl, United States District Court for the District of Wyoming (hereinafter the "district court") following a second trial. The second trial occurred after this Court entered *Cupps v. PCLHID*, 799 Fed. Appx. 571 (10th Cir. 2019) (hereinafter the "2019 Decision"). The 2021 district court ruling is cited to herein as the "District Court Ruling."

## **REQUEST FOR EN BANC CONSIDERATION- RULE 35(b)(1)**

With respect to *en banc* determination, the portion of the 2023 Decision rejecting the district court's fact findings and ruling regarding the location of the easement line for Lake Hattie Reservoir conflicts with the fundamental directive of the 2019 Decision, thus creating an internally inconsistent judgment. Consideration by the full court is therefore necessary to secure and maintain uniformity. Specifically, the 2019 Decision directed the district court to determine the location of the easement relying only on information shown on a 1909 survey map and field notes. Yet, the 2023 Decision disallowed consideration of two key facts set forth *on*

1

*the very face* of the 1909 survey map and field notes, declaring that such a ruling was mandated by law of the case principles.

Additionally, the 2023 Decision raises questions of exceptional importance relating to the Act of March 3, 1891, 26 Stat. 1101-02, ch. 561, §§ 18-21, codified as amended at 43 U.S.C. §§ 946-949[1] (the "1891 Act"). The 2023 Decision improperly disallows consideration of: (i) the purpose of an 1891 Act easement, and (ii) the related question of whether state-based water rights can be stored under an 1891 Act easement. The 2023 Decision precludes consideration of the very purpose of PCLHID's 1891 Act easement, an easement created *only* to store irrigation water.

## REQUEST FOR PANEL REHEARING

As to the request for panel rehearing, the 2023 Decision did not take account of key findings in the district court's ruling that comport with the 2019 Decision. Specifically, the 2023 Decision misconstrued the key factual basis for the district court's ruling. Moreover, evidence disclosed for the first time at the second trial in 2021 concerning the reliability of the Rosecrans Survey warrants modification of three parts of the 2023 Decision: the level line issue, high-water line issue, and storage of water issue.

---

[1] While the 1891 Act was repealed in 1976, the repeal did not eliminate existing rights-of-way. *See* Pub. L. 94-579, § 706(a), 90 Stat. 2743 (1976).

**STATEMENT OF BACKGROUND FACTS**

The PCLHID is a Wyoming irrigation district that owns and operates Lake Hattie Reservoir. Landowners/Appellants own lots on the south shore of the lake. There are forty (40) such lots, but only twelve (12) lots have joined this litigation. [Appellants' Appendix Vol. I 32-35] (hereafter citation format: "[Applt. Appx. Vol. I xx]). (Plaintiff Tony Hoch withdrew from the suit).

In 1909, PCLHID's predecessor filed survey field notes and a map (hereinafter collectively the "Rosecrans Survey" or separately the "Rosecrans map" or the "Rosecrans field notes") of Lake Hattie Reservoir with the U.S. Interior Department to obtain an easement under the 1891 Act. [Applt. Appx. Vol. I 167-180, 182-183]. In 1911, the Interior Department approved the Rosecrans Survey "as an application for an easement for a reservoir and right of way for the canals." [Applt. Appx. Vol. I 185].

In 1923, the Interior Department found that Lake Hattie had been "constructed and completed **exactly in conformity** with the specifications" of the 1909 Rosecrans Survey. [Applt. Appx. Vol. I 196-197] (emphasis supplied). Thus, the Interior Department expressly found the easement was "earned." [Applt. Appx. Vol. I 197].

**ARGUMENT**

I.     **The 2019 Tenth Circuit Ruling**

To understand how the district court's 2021 ruling comports with controlling

provisions of the 2019 Decision, a summary of the 2019 Decision is appropriate.

The 2019 Decision explained that irrigation companies were obligated to file a map of their reservoir, "and upon the approval thereof by the Secretary of the Interior . . . and thereafter all such lands over which such rights of way shall pass shall be disposed of *subject to such right of way*." *Cupps v. PCLHID*, 799 Fed. Appx. at 573 (citing the 1891 Act) (emphasis supplied)).

The 2019 Decision found the "central purposes" of the 1891 Act's map requirement were to provide notice and certainty for the future, such that "the 'line of survey' . . . should be . . . exactly as possible, the water line of the proposed reservoir." *Id*. at 573, 581 (quoting 1908 Interior Department 1891 Act regulations, 36 Pub. Land Dec. 567 (1908)).  As the 2019 Decision noted, the 1908 regulations required field notes and a map that could be "accurately retraced" in the future. *Id*. at 573. The district court ruling discussed the importance of the need for accurate/repeatable retracement of the easement line, and issued a decision providing such certainty, as described below.

Other key provisions of the 2019 Decision are reiterated as follows:

- The 1891 Act's "statutory and regulatory framework . . . requires that the Irrigation District's right-of-way under the Act be determined by reference to the approved map." *Cupps v. PCLHID*, 799 Fed. Appx. at 585.

- That the:

  > Extent of the ground occupied by the water of a reservoir, for which a right of way has been granted under [the Act], **must be determined from the high-water line,** *as shown by the approved map*. The approval of the map by the Department is an adjudication that the whole area shown to be within the **high-water line of the reservoir is necessary** for the construction, maintenance, and care of such reservoir.

  *Id.* at 581 (quoting *Windsor Reservoir & Canal Co. v. Miller*, 51 Pub. Lands Dec. 27, 33 (Dept. of Interior Jan. 10, 1925)) (boldface added, italics in original).

- The right of way vests "**for the purpose indicated in the act**."). *Cupps v. PCLHID*, 799 Fed. Appx. at 579 (citing *Kern River Co. v. United States*, 257 U.S. 147, 151 (1921)) (emphasis supplied) (the primary purpose of an 1891 Act easement is to allow storage of water for irrigation).

- The 1891 Act grants a right of way "to any canal ditch company, irrigation or drainage district formed for the **purpose of irrigation** or drainage . . . . and the privilege herein granted **shall not be construed** to interfere with the control of water **for irrigation and other purpose** under authority of the respective States or territories." 43 U.S.C. § 946. (emphasis supplied).

- The 2019 Decision rejected the district court's 2018 determination the easement line could be transitory, noting that the Rosecrans map "certified that the surveys of the reservoir and its canals 'represent **level lines**, which are the proposed water lines of the reservoirs and the proposed grade lines of the canals'" and that the Rosecrans survey "field notes stated that a 'self-reading rod divided into feet and

tenths ... served ... as a level rod to determine the **true water line**.'" *Cupps v. PCLHID*, 799 Fed. Appx. at 580, also at 574 (quoting language from the Rosecrans map and Rosecrans field notes) (emphasis supplied).

- Finally, the 2019 Decision specifically noted how the Secretary of Interior's approval of the Rosecrans Survey "approved of a line fixed to the original topography . . . ." *Cupps v. PCLHID*, 799 Fed. Appx. at 581.

Thus, the easement line must be defined by the Rosecrans Survey.

## II.   2023 Decision Improperly Rejects Consideration of Key Information the 2019 Decision Found To Be Controlling

A key problem with the 2023 Decision is that while the 2019 Decision directed the district court to locate the easement line using only the Rosecrans Survey, the 2023 Decision ruled the 2019 Decision had declared the high-water line and Rosecrans' depiction of a level line to be "*irrelevant*." 2023 Decision at 11. Yet, as a result of evidence from the second trial the district court found the Rosecrans Survey itself contained both of these factors. District Court Ruling at 6-7, Applt. Appx. Vol. I 167-180, 182-183. Thus the impossibility: the 2019 Decision directed the district court to rely only on the Rosecrans Survey, but then declared the high-water line and use of a level line to store water to be irrelevant (even though set forth in the Rosecrans Survey) because of the law of the case doctrine.

PCLHID acknowledged law of the case doctrine, but cited *Dobbs v. Anthem Blue Cross & Blue Shield*, 600 F.3d 1275 (10th Cir. 2010), by which this Court:

> recognizes three 'exceptionally narrow' circumstances in which the law of the case doctrine does not apply: '(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice.'

PCLHID's Brief at 28 citing *Dobbs* at 1281. PCLHID asserted the third exception, but the first exception should apply as well.

When the 2023 Decision cast aside express provisions of the very documents the 2019 Decision said should guide the district court's ruling (the Rosecrans Survey) it improperly relied on law-of-the case principles and failed to correct a clearly erroneous portion of the 2019 Decision. Said differently, the high-water line issue and the level line issue *cannot be irrelevant* when even the 2023 Decision plainly states "we previously held the Reservoir's boundaries may only be determined by reference to the original 1909 map . . . ." 2023 Decision at 2. The Rosecrans Survey includes the high-water line and use of a level line.

Moreover, with due respect, the 2023 Decision also improperly ignores another important guiding principle, the mandate rule, which:

> is a corollary to the law of the case [doctrine] requiring trial court conformity with the appellate court's terms of remand." *United States v. West,* 646 F.3d 745, 748 (10th Cir. 2011); *Zinna v. Congrove,* 755 F.3d 1177, 1182 (10th Cir. 2014) (holding that the mandate rule "provides that a district court must comply strictly with the mandate

rendered by the reviewing court"). **"[T]he scope of the mandate on remand in the Tenth Circuit is carved out by exclusion: unless the district court's discretion is specifically cabined, it may exercise discretion on what may be heard."** . . . **"the district court is to look to the mandate for any limitations on the scope of the remand and, in the absence of such limitations, exercise discretion in determining the appropriate scope."** *Id.* **"This approach has been characterized ... as a presumption in favor of a general remand."** *Id.* Notably, "[t]he mandate rule is a rule of policy and practice, not a jurisdictional limitation, which thus allows some flexibility in exceptional circumstances." *Id. (internal quotation marks omitted).*

*Dish Network Corp. v. Arrowood Indem. Co.*, 772 F.3d 856, 864 (10th Cir. 2014) (emphasis supplied).

Citing both *Dish Network* and *United States v. Walker*, 918 F.3d 1134 (10th Cir. 2019), the district court specifically held it would "review any relevant evidence the court could have heard at the first [bench trial]." District Court Ruling at 3, nt. 2., citing *Walker*, 918 F.3d at 1144.

The mandate rule, and the district court's reliance on the principles described above are significant because of a fundamental issue discovered during the second trial: while the district court and both parties had earlier assumed the accuracy of the Rosecrans Survey, after PCLHID's surveyor carried out a full survey of Lake Hattie Reservoir in 2021, the district court found the Rosecrans survey contained errors. District Court Ruling at 16.  The district court found that because "of the errors made by Rosecrans, any surveyor who now attempts to retrace the Rosecrans line will likely map out that line in a different location from another surveyor also attempting

8

to retrace that line." District Court Ruling at 17. Because of this newly-discovered evidence the district court—obviously relying on the portion of *United States v. Walker* that a trial court "may review any relevant evidence the court could have heard" at the first trial—properly considered testimony from the parties' surveyors.

In doing so, however, the district court nonetheless abided by this Court's 2019 Decision that directed it to assure the easement line conformed to the original topography of Lake Hattie. As the district court found, despite some of its flaws, there were "portions of the Rosecrans survey that do in fact reflect the true location of the Rosecrans line and the physical configuration, topography, and location of the spillway" and these factors were a "strong indication of the on-the-ground location of that line." District Court Ruling at 18.

Accordingly, the district court considered the easement line described by PCLHID's surveyor on Sheet 3 and Sheet 4. District Court Ruling at 20-21. A key finding the 2023 Decision does not discuss is that the district court *specifically found* the easement line shown on Sheet 3 and Sheet 4 can be determined "at any point in time" by "any surveyor **without a series of assumptions**." District Court Ruling at 20 (emphasis supplied). Moreover, the district court specifically found that "[u]se of that line **requires no correction** and that line will close." *Id.* (emphasis supplied).

Moreover, the district court specifically found PCLHID's surveyor "did not choose the location of the Rosecrans line shown on Sheet 3 based on elevation, but

instead based on the **conformity of a portion of the retraced Rosecrans line with the physical location of the reservoir's spillway, which has not changed in any material way since the reservoir was constructed**." District Court Ruling at 18. (emphasis supplied). Thus, by relying on conformity between the Rosecrans map and the present spillway location, the district court did not go beyond the map: it relied on the map. While it is true the district court considered the 2021 survey, the district court's finding on this issue fell well within the principle that a trial court "generally has discretion to expand the retrial beyond the error causing the remand." District Court Ruling at 3, nt. 2 (citing *United States v. Walker*, 918 F.3d at 1144).

Finally, these important findings strictly conform with the 2023 Decision's citations concerning survey law:

1. The "location of the boundary as determined by the original survey "takes precedence, even if erroneous . . . ." 2023 Decision at 14 (citing *United States v. Reimann*, 504 F.2d 135, 139 (10th Cir. 1974)). The district court relied on the boundary location shown on the Rosecrans map: it compared the spillway location on the Rosecrans map to today's location, and found them to be identical. District Court Ruling at 18.

2. "The original survey as it was actually run on the ground controls. It does not matter that the boundary was incorrect as originally established." 2023 Decision at 14 (citing *United States v. Doyle*, 468 F.2d 633, 636 (10th Cir. 1972) (internal

10

citations omitted)). Even though the district court found parts of the Rosecrans Survey were unreliable, it relied on other portions of the Rosecrans Survey showing exact topographic conformity with the easement line depicted by PCLHID's surveyor: the on-the-ground spillway location shown on the Rosecrans map aligns with the surveyed location of the spillway today. District Court Ruling at 18.

3. "Neither a court nor a surveyor may correct an error in an original survey once the survey has been approved." 2023 Decision at 14 (citing 1 CLARK ON SURVEYING AND BOUNDARIES § 15.12 (6th ed. 1992)). The 2023 Decision fails to recognize the district court specifically approved the easement line shown on Sheet 3/Sheet 4 for the *very reason* stated in the CLARK treatise: that line *did not require* any correction and the line can be located repeatedly *without* the need for assumptions. District Court Ruling at 20. Thus, PCLHID *did not* ask the district court to disregard the Rosecrans Survey, and the district court did not do so.

For clarification, however, PCLHID's position (adopted by the district court) is that even with corrections by a surveyor, an entirely retraced line cannot be located on "the ground today with any reliability or accuracy." District Court Ruling at 17 (discussing Sheet 2, which attempted to lay out the entire easement line). In contrast, the easement line shown on Sheet 3 and Sheet 4 can be located without the need to make any corrections or make any assumptions, and serves the goal of certainty of location spelled out in case law.

The Landowners contend PCLHID's surveyor simply used semantics and in fact relied on elevation, but the district court *specifically found* this was not the case: it found that the easement line was "based on the conformity of a portion of the retraced Rosecrans line with the physical location of the reservoir's spillway . . . ." This finding of fact is not clearly erroneous. Moreover, it shows the district court *expressly relied* on a portion of the Rosecrans Survey and verified the accuracy of that part of the Rosecrans map because of topographic conformity with that part of the reservoir today, which has never been modified. District Court Ruling at 18.

While it is true the spillway line has an elevation, this Court should bear in mind two important, but simple, principles. First, *every* line shown on a survey map of real property reflects an elevation. Second, if the line is a level line, then the line will have one constant elevation. If the line is not a level line, then that line will necessarily have a series of different elevations. The line depicted by PCLHID's surveyor in Sheet 3 and Sheet 4 and adopted by the district court as the line of the 1891 Act right-of-way easement is a level line, a key feature specifically referenced *on the face* of the Rosecrans map. [Applt. Appx. Vol I 183].

## III. The 2023 Decision Ignores Controlling Law

Again relying on law of the case principles, the 2023 Decision states the question of whether the easement line would allow storage of PCLHID's water rights is "irrelevant." 2023 Decision at 13. This ruling ignores the express language of the

12

1891 Act, statutory construction tenets, and dramatically departs from common law easement principles. Said bluntly: why acquire an easement that cannot store water?

"Because there is no federal common law of property, a federal court is obligated to employ applicable state law when determining the nature of a property interest." *United States v. One Parcel of Real Est. at 3229 S.W. 23rd St., Miami Fla.*, 768 F. Supp. 340, 345 (S.D. Fla. 1991) (citing *United States v. Yazell,* 382 U.S. 341 (1966)) (other citations omitted). *See also Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 378–79 (1977) ("Under our federal system, property ownership is not governed by a general federal law, but rather by the laws of the several States." and that this "principle applies to the banks and shores of waterways."). Thus, even though the 1891 Act is a federal statute, Wyoming law applies to consideration of the easement's purposes.

Wyoming law requires courts to "determine the intent of the parties to the easement" and "the purpose of the contract." *Upper Wagon Box, LLC v. Box Hanging Three Ranch Ltd. P'ship*, 2022 WY 155, ¶¶ 22, 23 (other citations omitted). Importantly, even if this Court is reluctant to rely exclusively on Wyoming law that requires consideration of the intent/purpose of an easement, Wyoming law is in strict accord with the 1891 Act itself, as the Act: (i) expressly references consideration of the purpose of an easement to store irrigation water, and (ii) mandates the Act "shall

not be construed to interfere with the control of water for irrigation and other purposes under authority of the respective States or Territories." 43 U.S.C. § 946.

Moreover, the 1891 Act also describes that irrigation companies should use an 1891 Act easement only for the purposes of the irrigation system and "so far as may be necessary for the construction, maintenance, and care of said canal or ditch." 43 U.S.C. § 949. Though this part of the 1891 Act refers to canals or ditches, federal courts have applied it to dams. *See Twin Falls Canal Co. v. Am. Falls Reservoir Dist. No. 2*, 49 F.2d 632, 635 (D. Idaho 1931), *aff'd*, 59 F.2d 19 (9th Cir. 1932), *cert. denied* 287 U.S. 638 (1932) ("the easement was granted by the United States upon its public lands . . . and is limited to the purposes specified in the statute.")

Finally, storage of irrigation water is "the primary purpose" of an 1891 Act easement. *See Kern River v. U.S.*, 257 U.S. 147 (1921) ("The Act of 1891, §§ 18–21, provided for rights of way through the public lands and reservations of the United States for ditches, canals and reservoirs for the purpose of irrigation but not for any other purpose." *Id*. at 151. Later legislation permitted an 1891 Act easement to be for other purposes, but "irrigation was still to be the 'main purpose.'" *Id*. at 152.

The controlling rulings and statutory language demonstrate how the 2023 Decision's ruling declaring the purpose of an 1891 Act easement to be "irrelevant" is clearly erroneous under *Dobbs* (600 F.3d at 1281) and must be set aside. While the 2023 Decision relied on law of the case principles in making this ruling because

the 2019 Decision held as such, this ruling still fails, regardless of its inclusion in the 2019 Decision. Such a construction ignores the plain language of the 1891 Act.

## CONCLUSION

In conclusion, for the reasons set forth above, this Court should grant *en banc* consideration, or issue an order for panel rehearing. PCLHID's counsel recognizes that rehearing is generally disfavored, but the important principles at play in this case warrant rehearing on the issues described herein, and several clearly erroneous findings must be corrected.

RESPECTFULLY SUBMITTED this 2nd day of August, 2023.

*/s/ M. Gregory Weisz*
M. Gregory Weisz, WSB #6-2934
PENCE AND MACMILLAN LLC
5908 N. Yellowstone Road
Cheyenne, WY 82009
307-638-0386
gweisz@penceandmac.com
Attorney for Appellee PCLHID

## CERTIFICATE OF DIGITAL SUBMISSION

## AND PRIVACY REDACTIONS

I hereby certify that with respect to the foregoing petition filed on behalf of Appellee Pioneer Canal-Lake Hattie Irrigation District, as submitted via the Court's ECF system, that:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) the ECF submission is an exact copy of the document to be filed with the Clerk; and

(3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program, Sophos Endpoint Security and Control ©, with the most recent update and according to the program is free of viruses.

RESPECTFULLY SUBMITTED on this 2nd day of August, 2023.

*/s/ M. Gregory Weisz*
M. Gregory Weisz
Wyoming State Bar #6-2934
PENCE AND MACMILLAN LLC
5908 N. Yellowstone Road
Cheyenne, WY 82009
307-638-0386
gweisz@penceandmac.com
Attorney for Appellee PCLHID

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1. The undersigned certifies this document complies with the word limit and

page limit of Fed. R. App. P. 35(b)(2) and Fed. R. App. P. 40(b)(1) & (2) because,

excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3716 words and meets the 15 page maximum page limit.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in font size 14 and type style Times New Roman.

RESPECTFULLY SUBMITTED on this 2nd day of August, 2023.

*/s/ M. Gregory Weisz*
M. Gregory Weisz
Wyoming State Bar #6-2934
PENCE AND MACMILLAN LLC
5908 N. Yellowstone Road
Cheyenne, WY 82009
307-638-0386
gweisz@penceandmac.com
Attorney for Appellee PCLHID

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of August, 2023, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Brandon L. Jensen
BUDD-FALEN LAW OFFICES, LLC
PO Box 346
Cheyenne, WY 82003-0346
Appellants' Attorneys

*/s/M. Gregory Weisz*
Of Pence and MacMillan LLC

# APPENDIX A: JULY 19, 2023 ORDER AND JUDGMENT

# (2023 DECISION)

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 19, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

| |
|---|
| C. MARK CUPPS; MARK B. KOENIG; CHERYL L. KOENIG; DALE M. CARLSON; PEGGY CARLSON; JOHN E. MCINROY; ANN W. PECK; PHILLIP KOSKI; ANDREA KOSKI; ESTHER SANDOVAL; KAY YUEN HING REVOCABLE TRUST, dated January 8, 2010; FLOYD A. BARBOUR; BARBARA J. BARBOUR; WILLIAM G. CUTLER; BRUCE R. SMITH; DEBRA J. SMITH; JOSEPH RUPINKSKI, JR.; LARRY WEYHRICH; KATHY WEYHRICH; LARAMIE BOAT CLUB, INC., a Wyoming corporation, |

        Plaintiffs - Appellants,

v.

PIONEER CANAL-LAKE HATTIE
IRRIGATION DISTRICT,

        Defendant - Appellee.

No. 21-8088
(D.C. No. 2:16-CV-00086-SWS)
(D. Wyo.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **HOLMES**, Chief Judge, **EBEL**, and **EID**, Circuit Judges.

_____

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Appendix A

This case requires us to decide whether the district court correctly adhered to our prior Order and Judgment in determining the scope of a federal right-of-way for a reservoir. We previously held the Reservoir's boundaries may only be determined by reference to the original 1909 map depicting the right-of-way as approved by the Secretary of the Interior. Because the district court considered additional factors—factors we earlier deemed irrelevant—we reverse and remand for findings consistent with this Order and Judgment. We have jurisdiction under 28 U.S.C. § 1291.

## I.

This is the second time we have considered the scope of the Pioneer Canal-Lake Hattie Irrigation District's (the "Irrigation District") federal right-of-way for the Lake Hattie Reservoir (the "Reservoir"). We discussed the facts in detail in our December 13, 2019, Order and Judgment and presume the parties are familiar with them. *See Cupps v. Pioneer Canal-Lake Hattie Irrigation Dist.*, 799 F. App'x 571, 573–78 (10th Cir. 2019) (unpublished). Here, we briefly summarize those facts necessary to explain our decision.

The Irrigation District's predecessor-in-interest obtained a right-of-way for the Reservoir under the Act of March 3, 1891, 26 Stat. 1095, 1101–02 (1891) (codified as amended at 43 U.S.C. § 946) (the "Act"). The Act provided for canal and ditch companies to obtain rights-of-way through specified public lands

> to the extent of the ground occupied by the water of [the] reservoir and of [the] canal and its laterals, and fifty feet on each side of the marginal limits thereof . . .. Provided, [t]hat no such right of way shall be so located as to interfere with the proper occupation by the Government of any such

2

Appendix A

> reservation, and all maps of location shall be subject to the approval of the Department of the Government having jurisdiction of such reservation, and the privilege herein granted shall not be construed to interfere with the control of water for irrigation and other purposes under authority of the respective States or Territories.

26 Stat. 1101–02 (1891).

In order to earn its right-of-way, the Irrigation District's predecessor-in-interest filed an application with the Secretary of the Interior in 1909. The application included a map of the proposed Reservoir, surveyed by chief engineer W.H. Rosecrans ("Rosecrans' map"), which depicted the proposed boundary line of the Reservoir ("Rosecrans' line"). The Secretary of the Interior approved the application, and the Reservoir was constructed accordingly.

Nearly twenty years later, Congress passed the Small Tract Act of June 1, 1938, which authorized the Secretary of the Interior to sell or lease certain public lands to private parties. *See* An Act to Provide for the Purchase of Public Lands for Home and Other Sites, 52 Stat. 609 (1938). Some of the available land bordered the south side of the Reservoir. In 1949, the Bureau of Land Management ("BLM"), the agency charged with establishing and patenting the new lots, undertook two surveys. First, the BLM resurveyed Rosecrans' line and determined the high-water line of the Reservoir. Second, the BLM surveyed the site for the new Small Tract lots, ensuring they were set back at least forty feet from the Reservoir's high-water line.

Before beginning the retracement of Rosecrans' line, the BLM surveyors noted that "the only relevant map . . . fixing the definite limit of the right-of-way for the

3

Appendix A

reservoir . . . seems . . . of doubtful value [because] numerous courses and distances describing the transverse are entirely omitted" and that Rosecrans' field notes were not in the file.  Aplt. App'x Vol. I at 200, 203, 205.  Nevertheless, the BLM surveyors found "the retracement of the right-of-way reveal[ed] some evidence of the original marking of the line." *Id.* at 219.  For example, the BLM located twelve wooden stakes in varying conditions, some of which seemed to coincide with Rosecrans' corners and some of which did not.  Rosecrans had not made any notes about wooden stakes.  The BLM surveyors also discovered errors in Rosecrans' survey, which they described as "negligible." *Id.*  To account for these errors, they applied "a correction of two minutes to the right . . . to the record courses of the right-of-way, between identified angle points." *Id.* at 223, 226.  The BLM then surveyed the Small Tract lots and patented them to the current owners' (the "Landowners") predecessors-in-interest.[1]

By 2015, water from the Reservoir had flooded the Landowners' properties and caused significant damage.  Some of the Landowners sued the Irrigation District, alleging it had exceeded the scope of its right-of-way as defined by Rosecrans' line on the 1909 map and was unlawfully storing water on their land.  They requested damages and an injunction to prevent the Irrigation District from flooding their properties.  The Irrigation District argued it had not unlawfully stored water on the Landowners' properties because the purpose of the Act had been to store a certain

---

[1] The BLM performed a second resurvey in 1996, which did not significantly differ from the first.

Appendix A

capacity of water, the scope of the right-of-way was defined by the extent of the land occupied by that water, and the Landowners' properties were subject to the Irrigation District's right-of-way.  Following a bench trial, the district court found for the Irrigation District and concluded the "right-of-way easement, as intended to be depicted on Rosecrans' 1909 map, extends to a water elevation of 7,277 feet, plus fifty feet horizontally."  *Cupps v. Pioneer Canal-Lake Hattie Irrigation Dist.* (*Cupps I*), 2:16-CV-0086-SWS, 2018 WL 11233256, at *8 (D. Wyo. Mar. 20, 2018), *rev'd and remanded*, 799 F. App'x 571 (10th Cir. 2019) (unpublished).  It further found the Irrigation District "has not exceeded that elevation in its administration of Lake Hattie Reservoir since at least 2014, and thus has not unlawfully possessed or stored water on Plaintiffs' properties."  *Id.*  It then dismissed the Landowners' claims.

The Landowners appealed and we reversed.  We held the scope of the Irrigation District's right-of-way is defined solely by Rosecrans' "approved map depicting a specific geographic area," and "other factors that arguably could be advanced as bearing on the scope of its rights—whether elevation or the practical infeasibility of using the right-of-way actually depicted on the map—are irrelevant." *Cupps*, 799 F. App'x at 582.  We further held the Secretary of the Interior had "approved [] a line fixed to the original topography because the map does not in any way indicate that the line is transitory, and the factor that allegedly determines the line's varying location (i.e., water elevation) is not expressed on the map . . .."  *Id.* at 581.  Rosecrans' reference to "level lines" on the map "hardly justifi[ed] . . . the conclusion that the line depicted on the map varies with topographical features *after*

5

*approval* in order to maintain a constant elevation." *Id.* (emphasis in original).  Thus, the on-the-ground location of the right-of-way boundary is the same today as it was in 1909 when the Secretary of the Interior approved Rosecrans' map.[2]

After we remanded, the Irrigation District, through its surveyor David Coffey, conducted the first complete retracement of the entire Reservoir since Rosecrans' original survey.  In so doing, Coffey discovered Rosecrans' survey contained errors in both the angles and distances of the survey calls resulting in a "significant" misclosure.[3]

At the second bench trial, Coffey and Jeffrey Jones, the Landowners' expert witness, provided conflicting testimony as to the present-day location of Rosecrans' line and the reliability of his map.  Jones testified Rosecrans' line "was and has been located on the ground" using modern survey methods.  Aplt. App'x Vol. II at 66. Coffey testified that "Rosecrans line as it's published can[not] reliably be relocated on the ground." *Id.* at 187.  Thus, it was necessary to determine what Rosecrans had

---

[2] The Irrigation District requested a rehearing *en banc* under Federal Rule of Appellate Procedure 35(a).  While a majority of our court voted to deny the motion, several judges would have granted it and joined Judge Carson's dissent from the denial.  *See Cupps v. Pioneer Canal-Lake Hattie Irrigation Dist.*, 955 F.3d 850, 851 (10th Cir. 2020) (Carson, J., dissenting from the denial of *en banc* rehearing). Nevertheless, because we did not revisit the case *en banc*, we are bound by the holding of our prior order and judgment.  *See United States v. Meyers*, 200 F.3d 715, 720 (10th Cir. 2000) ("We are bound by the precedent of prior panels absent *en banc* reconsideration or a superseding contrary decision by the Supreme Court." (quoting *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) (per curium))).

[3] Coffey explained a misclosure is "a distance by which a described polygon fails to close upon itself."  Aplt. App'x Vol. II at 183.

Appendix A

intended, which, according to Coffey, was "to use the spillway elevation of the reservoir to define the high-water line" which, in turn, defined the boundary line.[4] *Id.* at 225, 238.

Jones and Coffey also provided conflicting testimony about the accuracy and reliability of the 1949 BLM resurvey. Jones testified he believed the BLM surveyors "made every effort to retrace Mr. Rosecrans' survey as precisely as possible" and the BLM resurvey was the "most accurate retracement of the boundary line for the Lake Hattie Reservoir." Aplt. App'x Vol. I at 154, 157. Coffey disagreed. He said the BLM had "perpetuated" Rosecrans' misclosure error by not applying modern correction methods and had mistakenly not accounted for the actual high-water line of the reservoir. Aplt. App'x Vol. II at 228–30. Further, Coffey testified the BLM had simply assumed the found wooden stakes "were original monuments by Rosecrans," *id.* at 226–27, and used them to draw its line despite Rosecrans' making no mention of wooden stakes, which "would have been customary," *id.* at 192.

Coffey then produced four Sheets, or maps, depicting possible on-the-ground locations of Rosecrans' line today. Sheet One was Coffey's attempt to retrace Rosecrans' line without any adjustment to account for the misclosure error. Coffey testified that, because of the error, Sheet One was not an "accurate depiction of the

---

[4] A "spillway" is "[a] channel or slope built to carry away surplus water from a reservoir." *Spillway*, Oxford English Dictionary Online, https://www.oed.com/view/Entry/186649 (last visited Nov. 22, 2022). The district court refers to "spillway" and "high-water elevation" synonymously. *See Cupps v. Pioneer Canal-Lake Hattie Irrigation Dist.* (*Cupps II*), No. 2:16-CV-0086-SWS, 2021 WL 5779398, at *2 n.6 (D. Wyo. Nov. 17, 2021).

Rosecrans['] line on the ground today" and could not "be used to locate Rosecrans line on the ground today with any reasonable reliability." *Id.* at 211–12. On Sheet Two, Coffey attempted to account for Rosecrans' errors using the compass rule adjustment method.[5] He testified Sheet Two was an "unreliable" depiction of Rosecrans' line because he had "to make a tremendous amount of assumptions and adjustments" to create it and, if asked to do it again, he could "start completely over and probably get a different solution." *Id.* at 216. Coffey said the line depicted on Sheet Two was also not reliable because it did not depict a level line. *Id.* at 219. Jones, on the other hand, said Coffey's compass rule adjustment "confirm[ed] the general location of the BLM survey very well." *Id.* at 66. In some places the line on Sheet Two was identical to the BLM resurvey, though in "some places there were slight deviations." *Id.*

The line depicted on Coffey's Third and Fourth[6] Sheets reached "*the exact same conclusion*" as the elevation-based line we earlier said was erroneous, although it reached that conclusion by a slightly different method. *Id.* at 238 (emphasis added). Coffey testified he did not base the line on Sheets Three and Four on elevation, *id.* at 237, but on "the level spillway . . . around the lake," *id.* at 220. He did not base this line "on [Rosecrans'] recorded field notes," *id.* at 239, and

---

[5] Jones explained the compass rule adjustment method is a "mathematical model that uses the ratio of a length of a line versus the length of the entire line and apply [*sic*] corrections or changes" to a measured survey. Aplt. App'x Vol. II at 64–65.

[6] Sheet Four is a close-up of part of Sheet Three.

Rosecrans' map did not "reference height of the spillway," *id.* at 119.  Regardless, Coffey testified this line best adhered to Rosecrans' intent, which was to draw a level line at the true water line.  *Id.* at 222.  The line on Sheets Three and Four overlapped with the Landowners' properties in several places.

After hearing the testimony, the district court concluded the errors in Rosecrans' survey made it "an unreliable source for determining the boundary of [the Irrigation District's] right-of-way easement for the Lake Hattie Reservoir."  *Cupps v. Pioneer Canal-Lake Hattie Irrigation Dist.* (*Cupps II*), 2:16-CV-0086-SWS, 2021 WL 5779398, at *12 (D. Wyo. Nov. 17, 2021) (unpublished).  Because the survey was inaccurate, the district court found it was required to establish the true boundary location by reference to Rosecrans' intent: to draw a level line.  It determined Sheets Three and Four best depicted Rosecrans' intent to set out level lines and held the boundary of the Reservoir should be defined by the spillway level of the dam. Because the court further found the Irrigation District had not exceeded the boundary as defined by the line on Sheets Three and Four, and because the Landowners' properties were subject to the right-of-way, the Irrigation District had "not unlawfully possessed or stored water on Plaintiffs' properties."  *Id.*, at *14.  Finally, it found the Irrigation District was entitled to "the right-of-way easement line itself and the fifty feet from the limits thereof" for access and maintenance purposes.  *Id.*, at *13.  It then quieted title in favor of the Irrigation District and dismissed the Landowners' claims.

Appendix A

The Landowners now appeal again. They raise four arguments: (1) the district court erred by disregarding Rosecrans' survey because of the misclosure; (2) the district court erred by setting the boundary of the right-of-way at the spillway line; (3) the district court erred by disregarding the BLM resurveys; and (4) the district court erred by finding the Irrigation District's right-of-way included an additional fifty feet from the marginal limits of the water.

## II.

This appeal involves both questions of law and fact. "We review the district court's legal conclusions in a bench trial de novo." *Ryan v. Am. Nat. Energy Corp.*, 557 F.3d 1152, 1157 (10th Cir. 2009). "The actual location of a disputed boundary line is a question of fact." *Sweeten v. U.S. Dept. of Agric. Forest Serv.*, 684 F.2d 679, 681 (10th Cir. 1982). "We review factual findings for clear error." *Ryan*, 557 F.3d at 1157. Under this standard, we "pay deference to the district court's findings based upon its observation of the testimony as well as the documentary evidence." *Id.* We will not overturn a finding of fact unless it is not supported by the record or we are "left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). "Of course, if the trial court bases its findings upon a mistaken impression of applicable legal principles, the reviewing court is not bound by the clearly erroneous standard." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 n.15 (1982).

### a.

10

Appendix A

We have already addressed which factors the district court may consider in determining the scope of the Irrigation District's right-of-way.  Our previous Order and Judgment held the scope of the right-of-way must be determined by reference to the original surveyed line on the approved map.  *See Cupps*, 799 F. App'x at 582–83, 585.  We held this line is fixed and does not vary with "topographical features *after approval* in order to maintain a constant elevation."  *Id.* (emphasis in original).  We rejected the Irrigation District's arguments that its right-of-way is defined by either the spillway elevation, the high-water line, the extent of the ground covered by the Reservoir's water, or by Rosecrans' expressed intent to run a level line.  *Id.*  In fact, we said, these "factors . . . are *irrelevant*."  *Id.* (emphasis added).

Under the law of the case doctrine, once we establish a rule of law and remand the case to the district court, that rule of law "should continue to govern the same issues in subsequent stages in the same case."  *Arizona v. California*, 460 U.S. 605, 619 (1983); *see also Fish v. Schwab*, 957 F.3d 1105, 1139 (10th Cir. 2020), *cert. denied*, 208 L. Ed. 2d 499 (Dec. 14, 2020).  The established rule should be followed by "both the trial court on remand and the appellate court in any subsequent appeal." *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995) (alteration omitted).  The law of the case doctrine plays a very important role: to "promote finality and prevent re-litigation of previously decided issues."  *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011).  "Law-of-the-case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit."  *Fish*, 957 F.3d at 1139.  Without this

Appendix A

doctrine, "an adverse judicial decision would become little more than an invitation to take a mulligan, encouraging lawyers and litigants alike to believe that if at first you don't succeed, just try again." *Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1240 (10th Cir. 2016).

Here, the district court did not follow the rule we established in our prior Order and Judgment. Instead, it concluded the errors in Rosecrans' map made it "an unreliable source for determining the boundary" and, because of this, it was required to find and follow the intent of the parties. *Cupps II*, 2021 WL 5779398, at *12. It found Rosecrans intended to depict a level line and, "the near-identical location of the adjusted Rosecrans' line and the physical location of the spillway today is a strong indicator that Rosecrans intended to lay out the level line of the reservoir in accordance with the location of the spillway." *Id.* at *13. It then fixed the Irrigation District's right-of-way boundary at the spillway. And while the district court studiously avoided tying the boundary line to elevation, it drew the line at the same place as it had after the first trial.

The factors the district court relied on and the conclusion it reached are in direct conflict with our 2019 Order and Judgment. Therefore, we reverse its decision that the scope of the Irrigation District's right-of-way is located as depicted in Coffey's Sheets Three and Four.[7]

---

[7] The Irrigation District briefly argues this situation presents one of the "three exceptionally narrow circumstances in which the law of the case [doctrine] does not apply," Aple. Br. at 28 (quoting *Dobbs v. Anthem Blue Cross & Blue Shield*, 600 F.3d 1275, 1281 (10th Cir. 2010)), because "the [2019 Order and Judgment] was

Appendix A

**b.**

The Landowners next ask us to decide the line depicted on Coffey's Sheet Two is the definite on-the-ground location of Rosecrans' line and therefore the definite scope of the Irrigation District's right-of-way. The district court rejected Sheet Two because it did not depict a level line and "would not allow [the Irrigation District] to store any of its . . . water rights in the Lake Hattie Reservoir." *Cupps II*, 2021 WL 5779398, at *9. As discussed above, we have said both of these factors are irrelevant. However, as we also held in 2019, the Irrigation District's right-of-way boundary must conform to Rosecrans' line as it originally existed on the ground and must be repeatable. The evidence before us conflicts on these two points and does not provide us with any degree of certainty as to whether the line drawn on Sheet Two conforms to Rosecrans' line. We therefore decline to hold Coffey's Sheet Two is the definite location of the Irrigation District's right-of-way boundary line, and we remand to the district court for further factual findings. We will, however, address some of the arguments the parties made to guide the district court in its determination.

---

clearly erroneous and would work manifest injustice," *id.* It argues we were wrong to ignore the feasibility of storing water, and our decision "would interfere with or prevent storage of state-regulated water," working manifest injustice. *Id.* at 29. However, we considered and rejected this same argument in our 2019 Order and Judgment and will not reconsider it now. *See Fish*, 957 F.3d at 1141 ("[W]here the earlier ruling . . . was established in a definitive, fully considered legal decision based on a fully developed factual record and a decision-making process that included full briefing and argument, . . . why should we not follow the usual law-of-the-case jurisprudence?" (citations omitted)).

Appendix A

First, the Irrigation District argues, and the district court found, the misclosure

Coffey discovered following our 2019 remand "make[s] the line depicted on

Rosecrans' 1909 map, in itself, an unreliable source for determining the boundary of

[the Irrigation District's] right-of-way easement for Lake Hattie Reservoir."  Aple.

Br. at 33.  Thus, according to the Irrigation District, the court is free to look beyond

the approved map and give effect to the intent of the original parties.  The Irrigation

District does not cite, and we have not found, any case where we disregarded an

approved survey simply because it contained a misclosure.  On the contrary, we have

held it is irrelevant whether an approved survey contained errors.  *See United States*

*v. Reimann*, 504 F.2d 135, 139 (10th Cir. 1974) (the location of the boundary as

determined by the original survey "takes precedence, even if erroneous (or 'largely

fictitious' and 'fatally defective' as found by the Trial Court)"); *United States v.*

*Doyle*, 468 F.2d 633, 636 (10th Cir. 1972) ("The original survey as it was actually

run on the ground controls.  It does not matter that the boundary was incorrect as

originally established." (internal citations omitted)).  Neither a court nor a surveyor

may correct an error in an original survey once the survey has been approved.

1 Clark on Surveying and Boundaries § 15.12 (6th ed. 1992).  Therefore, we reject

the argument that the 1909 map should be disregarded because it contains a

misclosure.

Second, the Landowners argue the district court must defer to the BLM and fix

the line at the location established by the 1949 and 1996 dependent resurveys.  We

disagree.  A resurvey does not determine boundaries, but merely "note[s] and

14

Appendix A

report[s] [the surveyed land's] character, as it appeared to [the second surveyor], as a means of enlarging the sources of information upon that subject otherwise available." *Gauthier v. Morrison*, 232 U.S. 452, 458 (1914). Therefore, "[t]he generally accepted rule is that a subsequent resurvey is evidence, although not conclusive evidence, of the location of the original line." *Doyle*, 468 F.2d at 636; *see also United States v. Hudspeth*, 384 F.2d 683, 687–88 (9th Cir. 1967). A resurvey very well may be the "best possible evidence" of an original line. 1 Clark on Surveying and Boundaries § 28.02 (8th ed. 2022). But "[w]here the lines of an original government survey lie on the ground and whether any particular tract is on one side or the other of that line are questions of fact which are always open to inquiry in the courts." *Id.*; *see also* 30 Rocky Mt. Min. L. Inst. 20-1 (1984) ("The courts . . . have refused to exalt resurveys to any controlling evidentiary role. Rather, the courts view the resurveys as mere evidence, on a par with all other evidence, on disputed boundary questions."). Therefore, the BLM resurveys are simply evidence of where Rosecrans' line is located, and questions of their accuracy and reliability are questions of fact best left to the district court.

Third, the district court found the Irrigation District is entitled to an additional fifty feet, beyond the marginal limits of the line shown on the approved map, for access and maintenance purposes. We agree. The Act states

> The right of way through the public lands . . . is granted . . . to the extent of the ground occupied by the water of any reservoir and of any canals and laterals and fifty feet on each side of the marginal limits thereof, and, upon presentation of satisfactory showing by the applicant,

> such additional rights of way as the Secretary of the Interior
> may deem necessary for the proper operation and
> maintenance of said reservoirs . . ..

43 U.S.C. § 946; *see also* 26 Stat. 1101 (1891) (". . . the right of way . . . is hereby

granted . . . to the extent of the ground occupied by the water of any reservoir and of

any canals and laterals and fifty feet on each side of the marginal limits thereof . . ."").

The plain language of this section automatically grants a right-of-way to the extent

the ground is covered by water *and* an additional fifty feet from the marginal limits

thereof for access and maintenance purposes.  The Act does not require the applicant

to show a need for the additional fifty feet; that requirement applies when the

applicant seeks additional rights.  The line on Rosecrans' map determines the ground

to be covered by water.  That the approved map does not contain a request for an

additional fifty feet beyond this line does not affect the Irrigation District's rights to

the additional fifty feet.  Such rights were granted automatically with the approval of

the map.

Finally, the district court held that the Landowners' properties are subject to

the Irrigation District's right-of-way.  *Cupps II*, 2021 WL 5779398, at *31.  The

Landowners do not contest this conclusion.  Accordingly, we deem the issue waived

and affirm this decision of the district court on this point.  *See Havens v. Colorado*

*Dep't of Corrs.*, 897 F.3d 1250, 1266 n.9 (10th Cir. 2018).

### III.

In sum, the scope of the Irrigation District's right-of-way is to be determined

only by the 1909 line drawn by Rosecrans and approved by the Secretary of the

Appendix A

Interior.  Other factors, including the intent of the parties to depict level lines, the elevation of the water, and the practical feasibility of recreating Rosecrans' line are irrelevant and not to be considered.  The district court may take into account the BLM's resurveys but need not afford them any special weight.  The Irrigation District is entitled to an additional fifty feet from the marginal limits of the scope of the right-of-way for maintenance and access.  Finally, the Landowners' properties are subject to the right-of-way to whatever extent it overlaps with their properties.

In light of the above, we REVERSE and REMAND for additional proceedings consistent with this order and judgment.

Entered for the Court


Allison H. Eid
Circuit Judge

Appendix A