# In the United States Court of Appeals for the Tenth Circuit

C. Mark Cupps, *et al.*,

*Plaintiffs-Appellants*,

v.

Pioneer Canal-Lake Hattie Irrigation District,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of Wyoming, No. 2:16-cv-00086-SWS
Honorable Scott W. Skavdahl, Presiding

**APPELLANTS' OPPOSITION TO PETITION FOR *EN BANC*
CONSIDERATION OR PANEL REHEARING**

Respectfully submitted,

Brandon L. Jensen
Budd-Falen Law Offices, LLC
300 East 18th Street
Post Office Box 346
Cheyenne, Wyoming 82003
(307) 632-5105 Telephone
(307) 637-3891 Facsimile
brandon@buddfalen.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....... ....... ........ ....... ....... ....... .......ii

SUMMARY OF OPPOSITION .... ....... ........ ....... ....... ....... ....... 1

    I.    *EN BANC* DETERMINATION IS NOT NECESSARY
          TO MAINTAIN UNIFORMITY OF DECISIONS AND
          THIS CASE IS NOT OF EXCEPTIONAL
          IMPORTANCE. ....... ....... ........ ....... ....... ....... ....... 2

          A.    THE PANEL'S DECISION DOES NOT CONFLICT
               WITH A PRIOR DECISION OF THIS COURT. .. ....... ....... 3

          B.    THIS CASE DOES NOT INVOLVE ANY QUESTIONS OF
               EXCEPTIONAL IMPORTANCE. ... ....... ....... ....... ....... 11

    II.    PANEL REHEARING IS NOT JUSTIFIED. . ....... ....... 11

          A.    THE IRRIGATION DISTRICT DID NOT ADDRESS
               COMMON LAW EASEMENT PRINCIPLES OR
               WYOMING STATE LAW IN ITS BRIEF. . ....... ....... ....... 13

          B.    THE ALLEGED PRACTICAL INFEASIBILITY OF USING
               THE RIGHT-OF-WAY HAS NOT BEEN OVERLOOKED
               OR MISAPPREHENDED BY THIS COURT...... ....... ....... 14

          C.    REQUEST FOR REHEARING SHOULD BE DENIED. ....... 18

CONCLUSION   ....... ....... ....... ....... ........ ....... ....... ....... ....... 18

CERTIFICATE OF COMPLIANCE WITH
TYPE-VOLUME LIMIT...... ....... ....... ........ ....... ....... ....... ....... 20

CERTIFICATE OF DIGITAL SUBMISSION . ....... ....... ....... ....... 21

CERTIFICATE OF SERVICE..... ....... ........ ....... ....... ....... ....... 22

# TABLE OF AUTHORITIES

**CASES:**

City & County of Denver, By & Through Bd. of Water
Comm'rs v. Bergland, 695 F.2d 465 (10th Cir. 1982). ....... ....... 15

Cupps v. Pioneer Canal-Lake Hattie Irrigation District,
799 Fed. Appx. 571 (10th Cir. 2019). ........ ....... ....... ....... 4, 5, 14

Silver King Coalition Mines Co. v. Conkling Mining Co.,
255 U.S. 151 (1921) ....... ....... ....... ........ ....... ....... ....... ....... 6-7

United States v. Doyle,
468 F.2d 633 (10th Cir. 1972) .. ....... ........ ....... ....... ....... ... 10, 11

United States v. Lane,
260 U.S. 662 (1923) ....... ....... ....... ....... ....... ....... ....... ....... 11

United States v. Rosciano,
499 F.2d 173 (7th Cir. 1974) .... ....... ........ ....... ....... ....... ....... 2

United States v. State Investment Co.,
264 U.S. 206 (1924) ....... ....... ....... ........ ....... ....... ....... ....... 10

United States v. Sutherland,
428 F.2d 1152 (5th Cir. 1970) .. ....... ........ ....... ....... ....... ....... 13

Western Pac. R. Corp. v. Western Pac. R. Co.,
345 U.S. 247 (1953) ....... ....... ....... ........ ....... ....... ....... ....... 2-3

**STATUTES:**

43 U.S.C. § 772 ....... ....... ....... ....... ........ ....... ....... ....... ....... 16

43 U.S.C. § 946 ....... ....... ....... ....... ........ ....... ....... ....... ....... 14

**RULES OR REGULATIONS:**

Fed.R.App.P. 40(a)(2)....... ....... ....... ........ ....... ....... .......….. 11-12

10th Cir. R. 35.1(A) .. ....... ....... ....... ........ ....... ....... ....... ....... 2

**ADMINISTRATIVE CASES:**

Regulations for Rights of Way Over Public Lands and
Reservations, 36 Pub. Lands Dec. 567 (1908)... ....... ....... ....... 15

**MISCELLANEOUS**:

Classification Order No. 10,
16 Fed. Reg. 9288-89 (Sept. 13, 1951)...... ....... ....... ....... ....... 17

**SUMMARY OF OPPOSITION**

The Irrigation District mistakenly assumes that the scope of its right-of-way is based entirely on the extent of its water rights. However, this is not a controversy over water rights, but over rights-of-way through the public lands of the United States, which is a different matter. An appropriation of water duly made and maintained under state law gives no right-of-way over the public lands of the United States for a reservoir to use the water. The only way in which a right-of-way can be acquired is through the method provided for filing with the Secretary of the Interior and securing his or her approval.

On July 19, 2023, a unanimous three judge panel issued its Order and Judgment in the above-entitled appeal. The panel's decision reversed the judgment of the trial court, concluding for a second time that the Irrigation District's right-of-way for the Lake Hattie Reservoir on federal lands in Albany County, Wyoming is determined exclusively by reference to the map submitted to and approved by the Department of the Interior in 1909. The panel's decision specifically rejected the notion that the Irrigation District's

right-of-way is based on an elevation which was not identified on the map or approved by the Department of the Interior.

The Irrigation District now claims that *en banc* consideration and/or a panel rehearing is necessary. However, there are no justifiable grounds for reconsideration of the panel's decision. *En banc* determination is not necessary to maintain uniformity of decisions and this case is not of exceptional importance. Similarly, a panel rehearing is not necessary, because the Irrigation District fails to highlight some controlling matter of law or fact which may have been overlooked or misapprehended by the panel's decision. The Irrigation District is attempting to reargue the previous decision on appeal by relying – more or less – on the exact same arguments which were denied in the previous appeal.

## I. *EN BANC* DETERMINATION IS NOT NECESSARY TO MAINTAIN UNIFORMITY OF DECISIONS AND THIS CASE IS NOT OF EXCEPTIONAL IMPORTANCE.

A request for *en banc* consideration is an extraordinary procedure and is disfavored.  See 10th Cir. R. 35.1(A). The function of *en banc* hearings is not to review alleged errors for the benefit of losing litigants. See United States v. Rosciano, 499 F.2d 173, 174 (7th Cir. 1974), citing Western Pac. R. Corp. v. Western Pac. R. Co.,

345 U.S. 247, 256-259 (1953) (stating that "it is difficult to believe that Congress intended to give an automatic, second appeal to each litigant in a Court of Appeals."). *En banc* review is intended to focus the entire court on an issue of exceptional public importance or on a panel decision that conflicts with a decision of the United States Supreme Court or of this Court.

### A. THE PANEL'S DECISION DOES NOT CONFLICT WITH A PRIOR DECISION OF THIS COURT.

The Irrigation District broadly argues that the panel's decision conflicts with a prior decision of this Court in this same case. See *Petition*, at pp. 6-12.[1] However, the substance of the Irrigation District's petition challenges this Court's previous decision in this case in 2019, namely that the high-water line of the reservoir is irrelevant for purposes of determining the boundaries of the reservoir's right-of-way. The Irrigation District makes only trivial attempts to explain how the two appellate decisions are inconsistent, but instead uses its argument as a second attempt to

---

[1] The Irrigation District does not claim nor argue that the panel's decision conflicts with a decision of the United States Supreme Court.

convince this Court that its decision in 2019 was decided incorrectly.

For example, the Irrigation District summarizes its argument as follows:

> A key problem with the 2023 Decision is that while the 2019 Decision directed the district court to locate the easement line using only the Rosecrans Survey, the 2023 Decision ruled the 2019 Decision had declared the high-water line and Rosecrans' depiction of a level line to be "irrelevant.". . . Thus, the impossibility: the 2019 Decision directed the district court to rely only on the Rosecrans Survey, but then declared the highwater line and use of a level line to store water to be irrelevant.

See *Petition*, at p. 6. According to the Irrigation District, "the 2023 Decision . . . failed to correct a clearly erroneous portion of the 2019 Decision." See id., at p. 7. Clearly, the Irrigation District is not challenging any inconsistency between the two decisions but attempting to appeal – again – this Court's decision from 2019.

In support of its argument, the Irrigation District relies on facts that were part of the record in 2019, cited by the Irrigation District in its argument, and considered and rejected by this Court in its ultimate decision. See Cupps v. Pioneer Canal-Lake Hattie Irrigation District, 799 Fed. Appx. 571, 580 (10th Cir. 2019) ("It is true that the map and its accompanying field notes *mentioned* the

running of "level lines" in surveying the reservoir and drafting the map. . . . This hardly justifies, however, the conclusion that the line depicted on the map varies with topographical features after approval in order to maintain a constant elevation."); see also id., at 582-83 ("We find, however, the Irrigation District's arguments [regarding the highwater line] unconvincing."). This Court's prior decision did not state that the boundary of the right-of-way should reflect the high-water line. Whatever the high-water line of the reservoir may be is entirely irrelevant. This Court's prior decision made clear that the only line of any importance in this case is the boundary of the right-of-way *as shown by the approved map*.

The Irrigation District claims that this Court's original decision in 2019, and its subsequent decision in 2023, "work a manifest injustice" because it is unable to maintain a water level of its own choosing. Nevertheless, the Court's original decision in 2019 concluded that the high-water line of the reservoir is determined by the approved map. See id., at 581. Moreover, the original map was surveyed over 110 years ago. There is no evidence in this matter that the ground shore of the reservoir in 1909 was, in fact, not at a level elevation. The topography, including ground elevation, may

5

have changed significantly since 1909 due to weather and erosion. See App. Vol. 1 at 279-298 (testimony of Braeden Hyde); see also App. Vol. 2 at 243 (testimony of David Coffey); see also App. Vol. 1 at 124, ¶14, fn. 15 (according to the district court, "Lake Hattie Reservoir is located . . . in an area known for high winds on a year-around basis. As a result, . . . the physical boundaries of Lake Hattie Reservoir constantly changed due to erosion, wave action and accretion and reliction of the lake boundary.").

The original surveyor located 170 separate survey points in laying out the boundary of the right-of-way. See App. Vol. 1 at 169-172. These points included specific courses and distances to create a two-dimensional outline of the boundary of the right-of-way. Moreover, the original surveyor also located at least twelve monuments or surveyor's stakes to mark or reference specific points along the course of the right-of-way. See App. Vol. 1 at 223-224 and 300. Yet, the Irrigation District's argument is devoid of any mention or citation to any of these monuments, courses or distances. Monuments or surveyor's stakes represent the *true location* of the lines as run by the original surveyor. See Silver King

Coalition Mines Co. v. Conkling Mining Co., 255 U.S. 151, 162 (1921).

Accordingly, the Irrigation District's petition for *en banc* review constitutes nothing more than yet another appeal of an issue that's been definitively resolved by this Court on two separate occasions. The remainder of the Irrigation District's arguments do not attempt to justify *en banc* review but seek affirmance of the district court's most recent decision on appeal.

The Irrigation District's arguments that the district court's decision was, in fact, in accordance with this Court's original decision, are also unconvincing. The district court relied exclusively on the testimony of the Irrigation District's surveyor, David Coffey, to set the right-of-way boundary at the elevation of the spillway. See App. Vol. 1 at 140, ¶ 14. Yet, Mr. Coffey's line of survey of the intended high-water line of the reservoir (Sheet 3), upon which the district court relied, is fatally flawed for one simple reason: Mr. Coffey's depiction of what he believed to be the *intended* location of the boundary line (Sheet 3) is *admittedly* not based on the original surveyor's map or field notes. See App. Vol. 2 at 239; see also id. at 239-240 (testimony of David Coffey confirming that his depiction of

the *intended* location is not the same as the original surveyor's *actual* location). There is no information in the original surveyor's field notes – including any line, course, distance, angle, or monument – that correspond to Mr. Coffey's depiction in Sheet 3. See id. at 242.

Significantly, Mr. Coffey *conceded* that his depiction of the intended location of the original surveyor's line of survey (Sheet 3) does not put the courses and lines at the same place where originally located by the original surveyor on the ground. See id., at 249-250. Mr. Coffey's depiction of the intended location "*materially changes*" the configuration of the original survey and moves the lines to an entirely new location. See id. at 263.

Mr. Coffey *conceded* at trial that a right-of-way at an elevation of 7,278 feet (Sheet 3) is not based on the original surveyor's map or field notes and is inconsistent with the approved map.

> Q.  Your depiction of what you believe to the intended location of Mr. Rosecrans' line, your sheet 3, is not based on his record field notes, is it?
>
> A.  That's correct.
>
>        *       *       *

Q. In fact, sheet 3 contains both your adjustment of Mr. Rosecrans' line and your depiction of what you believe he intended, right?

A. Correct.

Q. So, they're not one and the same, are they?

A. No, they're not.

 *     *     *

Q. There are no lines in Mr. Rosecrans' field notes that correspond to an elevation of 7,278 feet, are there?

A. That is correct.

 *     *     *

Q. Your depiction of what you believe to be the intended location of Mr. Rosecrans' line, your sheet 3, does not relocate the courses and lines at the same place where originally located by Mr. Rosecrans on the ground, does it?

A. No, it does not.

See id. at 239, 240, 242 and 249-250. Consequently, the Irrigation District's arguments are unavailing. The Irrigation District's own surveyor confessed at trial that the map ultimately adopted by the district court was not grounded in any way on the reservoir's original map or field notes.

The Irrigation District further argues that the "on-the-ground spillway location shown on the Rosecrans map aligns with the surveyed location of the spillway today." <u>See</u> *Petition*, at p. 11. But that argument is misleading. On Mr. Coffey's Sheet 3, the blue line (representing the spillway elevation of 7,278 feet) and the black line (representing the original approved right-of-way) are one and the same in the location of the dam and spillway. <u>See</u> App. Vol. 2 at 31 and 240-241. Thus, the physical location of the spillway is entirely inconsequential.

Consequently, the decision of the district court to disregard the original map and rely instead on a presumed intended location, which is entirely inconsistent with the original map, was erroneous. Despite its misgivings concerning the accuracy of the approved map, the district court was not empowered to locate the right-of-way's boundary lines in any position other than those established by the original surveyor, regardless of how imprecisely they may have been located. "The original survey as it was actually run on the ground controls." <u>See</u> <u>United States v. Doyle</u>, 468 F.2d 633, 636 (10th Cir. 1972), <u>citing</u> <u>United States v. State Investment Co.</u>, 264 U.S. 206, 212 (1924). "It does not matter that the boundary was

incorrect as originally established. A precisely accurate resurvey cannot defeat . . . the original grant and the boundaries originally marked off." <u>See</u> <u>id.</u>, <u>citing</u> <u>United States v. Lane</u>, 260 U.S. 662, 665-66 (1923).

**B.    This case does not involve any questions of exceptional importance**.

The Irrigation District does not argue that this case involves any questions of exceptional importance. This case does not raise issues of important systemic consequences for the development of the law or the administration of justice. The panel decision's narrow holding applies only to the Lake Hattie Reservoir in Albany County, Wyoming. There is no basis for concluding that the panel's decision will impact or affect any other reservoir which originated under the Act of 1891.[2]

**II.    PANEL REHEARING IS NOT JUSTIFIED**.

A properly drawn petition for rehearing serves a very limited purpose: to direct the attention of the Court to some controlling matter of law or fact which a party claims was "overlooked or

---

[2] It is noteworthy that neither the federal government nor any *amicus curiae* requested to participate in the briefing of this case.

misapprehended." <u>See</u> Fed.R.App.P. 40(a)(2). As suggested by the rule, petitions for panel rehearing should alert the panel to specific factual or legal matters that the party raised, but that the panel may have failed to address or may have misunderstood. It is not a proper function of a petition for rehearing to permit the petitioner to reargue his case anew. It goes without saying that the panel cannot have "overlooked or misapprehended" an issue that was not presented to it.

Here, the Irrigation District argues that that the panel's decision ignored state law and misapprehended the statute at issue. <u>See</u> *Petition*, at pp. 12-15. However, either these issues are raised for the first time in a petition for rehearing, or the panel considered each of these issues in turn and simply reached a different conclusion than that advocated by the Irrigation District. The Irrigation District has not made the required showing that the panel overlooked or misapprehended any points of law in its original review.

**A.** <u>**THE IRRIGATION DISTRICT DID NOT ADDRESS COMMON LAW EASEMENT PRINCIPLES OR WYOMING STATE LAW IN ITS BRIEF**</u>.

The Irrigation District claims that the panel's decision "dramatically departs from common law easement principles" and otherwise contravenes Wyoming state law. <u>See</u> *Petition*, at pp. 12-13. However, the Irrigation District did not argue in its brief before this Court that common law easement principles or Wyoming state law applied. Indeed, the Irrigation District's brief is bereft of citation to a single case from the State of Wyoming. None of the cases relied upon by the Irrigation District in its petition for rehearing, for this specific argument, were cited or relied upon in its brief.

In short, the Irrigation District seeks to raise an issue in its petition for rehearing that was not briefed nor argued to this Court prior to the rehearing petition. The time for presenting new, substantive arguments to this Court has passed: "Having tried and appealed its case on one theory, an unsuccessful party may not then use a petition for rehearing as a device to test a new theory." <u>See</u> <u>United States v. Sutherland</u>, 428 F.2d 1152, 1158 (5th Cir. 1970). A panel rehearing is not a vehicle for presenting new

arguments and this Court should not entertain arguments raised for the first time in a petition for rehearing.

### B. THE ALLEGED PRACTICAL INFEASIBILITY OF USING THE RIGHT-OF-WAY HAS NOT BEEN OVERLOOKED OR MISAPPREHENDED BY THIS COURT.

The Irrigation District argues that the panel's decision is contrary to the Act of 1891, 43 U.S.C. § 946, because it may not allow the Irrigation District to store any of its water rights in the reservoir. See *Petition*, at pp. 14-15. However, this issue was considered and rejected in the Court's previous 2019 decision, see Cupps v. Pioneer Canal-Lake Hattie Irrigation District, 799 Fed. Appx. at 582, and the panel expressly declined to reconsider it again. See 2023 Order and Judgment, at p. 12 fn. 7.[3]

Despite application of the law of the case doctrine, the Irrigation District's argument that this Court should take into consideration "the practical infeasibility of using the right-of-way actually depicted on the map," makes no sense. First, the Act of 1891 assumes that an applicant for a right-of-way will submit a

---

[3] At this point, six separate judges of this Court have considered this argument and rejected it.

14

map with a line of survey which should be as exactly as possible the water line of the proposed reservoir. <u>See</u> Regulations for Rights of Way Over Public Lands and Reservations, 36 Pub. Lands Dec. 567, 572, § 10 (1908).[4] "It was rational for the [Department of the] Interior to require accuracy so that it . . . could plan properly." <u>City & County of Denver, By & Through Bd. of Water Comm'rs v. Bergland</u>, 695 F.2d 465, 480 (10th Cir. 1982). Evidence of construction must be filed in the local office. <u>See</u> Regulations for Rights of Way Over Public Lands and Reservations, at § 23, 36 Pub. Lands Dec. at 575. If there are deviations from the right-of-way previously approved, either before or after construction, then "there must be filed new maps . . . changed to agree with the facts in the case." <u>See</u> <u>id.</u>

Further, the "practical infeasibility" of using the right-of-way as depicted on the map is of no relevance. <u>See</u> <u>City & County of Denver, By & Through Bd. of Water Comm'rs v. Bergland</u>, 695 F.2d at 480 (ignoring concerns that the original right-of-way may be "technologically difficult and economically infeasible."). By

---

[4] A copy of these regulations can be found in the Appellants' Addendum attached to their opening brief.

permitting the "practical infeasibility" of using the right-of-way to influence the scope of the right-of-way would be to make the map itself superfluous and unnecessary. It makes no sense that the Irrigation District should be automatically entitled to a new, larger right-of-way that was never submitted to or approved by the Department of the Interior. To accept this theory would be to disrupt property rights which have been in place for close to seventy years, thus violating bona fide rights protected in principle by 43 U.S.C. § 772 ("That no such resurvey or retracement shall be so executed as to impair the bona fide rights or claims of any . . . owner of lands affected by such resurvey or retracement.").

The evidence at trial suggested that prior to the platting of the Plaintiffs' properties in 1949-50, the Irrigation District's predecessors-in-interest were well aware of the scope of its right-of-way, and yet, never complained or objected that its scope was insufficient to store the entirety of its water rights. Stated another way, the construction of the reservoir is consistent with the boundary established by the original map.

For example, in 1923, after construction of the reservoir, Lyman E. Bishop, a civil engineer who surveyed the reservoir and

supervised its construction, stated *under oath* "that the traverse of the shoreline of [the reservoir] when filled to full capacity level is as given in the field notes accompanying [the application] . . . and that [the reservoir] as constructed conforms to the map and accompanying field notes." <u>See</u> App. Vol. 1 at 119, ¶ 7. Mr. Bishop voiced no concern or objection at that time that the reservoir was not large enough to accommodate all of the Irrigation District's water rights.

Further, in 1951, after a survey and platting of the lands adjacent to the reservoir, the BLM issued Classification Order No. 10, which made the lands available for leasing to the general public. <u>See</u> 16 Fed. Reg. 9288. The Order itself acknowledged that the Irrigation District's predecessor-in-interest was not filling the reservoir to an elevation of 7,278 feet, stating instead that "the water level of Lake Hattie fluctuates between elevations of 7,250 and 7,257 feet above sea level." <u>See</u> <u>id.</u>

There is no truth to the concern that if the right-of-way is based on the approved map, the Irrigation District will be unable to use any of its water rights. In fact, the Irrigation District used its water rights for at least fifty years, prior to the platting of the

Plaintiffs' lands, and an additional sixty-five years before the commencement of this litigation.

### C.   <u>REQUEST FOR REHEARING SHOULD BE DENIED</u>.

The Irrigation District fails to highlight some controlling matters of law or fact which may have been overlooked or misapprehended by the panel's decision. It is not a proper function of a petition for rehearing to permit the petitioner to reargue his case anew. The panel did not overlook or misapprehend any of the issues raised by the Irrigation District; rather, the panel simply reached a conclusion contrary to the Irrigation District's interests. Consequently, panel rehearing is not necessary.

## III.   CONCLUSION.

Considering the foregoing, the Irrigation District's Petition for *En Banc* Consideration or Panel Rehearing should be denied in its entirety. *En banc* determination is not necessary to maintain uniformity of decisions and this case is not of exceptional importance. A panel rehearing is not necessary, because the Irrigation District fails to highlight some controlling matter of law or fact which may have been overlooked or misapprehended by the panel's decision.

RESPECTFULLY SUBMITTED this 16th day of August 2023.

/s/ Brandon L. Jensen
Brandon L. Jensen
BUDD-FALEN LAW OFFICES, LLC
300 East 18th Street
Post Office Box 346
Cheyenne, Wyoming 82003-0346
(307) 632-5105 Telephone
(307) 637-3891 Facsimile
brandon@buddfalen.com

*Attorney for Appellants*

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.     This document complies with the word limit of Fed. R. App. P. 35(b)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,533 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in font size 14 and type style Bookman Old Style.

Dated August 16, 2023

/s/ Brandon L. Jensen
Brandon L. Jensen
BUDD-FALEN LAW OFFICES, LLC
300 East 18th Street
Post Office Box 346
Cheyenne, Wyoming 82003-0346
(307) 632-5105 Telephone
(307) 637-3891 Facsimile
brandon@buddfalen.com

*Attorney for Appellants*

**CERTIFICATE OF DIGITAL SUBMISSION**

I hereby certify that with respect to the foregoing:

1.     All required privacy redactions have been made per 10th Cir. R. 25.5.

2.     If required to file additional hard copies, the ECF submission is an exact copy of those documents.

3.     The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, and according to the program are free of viruses.

Dated August 16, 2023

/s/ Brandon L. Jensen
Brandon L. Jensen
BUDD-FALEN LAW OFFICES, LLC
300 East 18th Street
Post Office Box 346
Cheyenne, Wyoming 82003-0346
(307) 632-5105 Telephone
(307) 637-3891 Facsimile
brandon@buddfalen.com

*Attorney for Appellants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of August 2023, I electronically filed the foregoing using the court's CM/ECF system which will send notification of such filing to the following:

M. Greg Weisz
Pence and MacMillan, LLC
172 Carey Avenue, Suite 600
Cheyenne, Wyoming 82001
gweisz@penceandmac.com

/s/ Brandon L. Jensen
Brandon L. Jensen
BUDD-FALEN LAW OFFICES, LLC
300 East 18th Street
Post Office Box 346
Cheyenne, Wyoming 82003-0346
(307) 632-5105 Telephone
(307) 637-3891 Facsimile
brandon@buddfalen.com

*Attorney for Appellants*